IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RODNEY S. RATHEAL,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>LINDSAY McCARTHY, SEC; TOM HARVEY, THE SALT LAKE TRIBUNE,<br><br>　　　　Defendants. | **REPORT AND RECOMMENDATION: THE SALT LAKE TRIBUNE AND TOM HARVEY'S MOTION TO DISMISS (ECF NO. 16)**<br><br>Case No.  2:17-cv-00997<br><br>Judge Dale A. Kimball<br><br>Magistrate Judge Evelyn J. Furse |

Pro se Plaintiff Rodney S. Ratheal initiated this case on September 5, 2017, (Compl., ECF No. 1), and subsequently filed two Amended Complaints, which are substantially the same as the original Complaint.  (See Am. Compl., ECF No. 8; 2d Am. Compl., ECF No. 39.)[1]

Mr. Ratheal asserts a defamation claim against Defendants The Salt Lake Tribune ("Tribune") and Tom Harvey (collectively, the "Tribune Defendants") relating to an article the Tribune published in December 2012.  The Complaint also includes misrepresentation claims against the Securities & Exchange Commission ("SEC") and Lindsay McCarthy (collectively, the "SEC Defendants") arising out of an investigation the SEC conducted into Mr. Ratheal and his company Premco Western, Inc. ("Premco") and the subsequent settled civil action that the SEC initiated against Mr. Ratheal and

---

[1] The citations to the Complaint, the Amended Complaint (ECF No. 8), and the second Amended Complaint (ECF No. 39) are the same.

1

Premco in December 2012. The District Judge dismissed Mr. Ratheal's claims against the SEC and Mr. McCarthy on Mr. Ratheal's Motion. (ECF No. 61.)

The Tribune Defendants move the Court[2] to dismiss Mr. Ratheal's defamation claim against them pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) on the grounds that the statute of limitations bars the claim and that the article at issue makes truthful and privileged statements. (Mot. to Dismiss & Mem. in Supp. of Mot. ("Tribune Mot."), ECF No. 16.)

For the reasons addressed below, the undersigned RECOMMENDS the District Judge GRANT the Tribune Defendants' Motion and DISMISS Mr. Ratheal's claims as time-barred.

## BACKGROUND

The Complaint's allegations arise out of an SEC investigation and civil suit filed against Mr. Ratheal and his company Premco, Securities and Exchange Commission v. Premco Western, Inc. et al. ("SEC v. Premco"), 2:12-cv-01120-BSJ (D. Utah), as well as online postings and an article published online regarding that case. (See Compl., ECF No. 1.) In SEC v. Premco, filed December 10, 2012, the SEC alleged that from June 2001 to April 2012, Mr. Ratheal, the sole owner, president, and CEO of Premco, raised $4.1 million from investors through the fraudulent and unregistered sale of undivided fractional working interests in two oil and gas wells along the Utah/Arizona border. (Premco Compl., ¶¶ 1, 2, 13 & 15, SEC v. Premco, 2:12-cv-01120-BSJ, ECF No. 2.) The SEC further alleged that Mr. Ratheal made various misrepresentations and

---

[2] District Judge Dale A. Kimball referred this case to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 12.)

omissions to investors, including failing to disclose that the wells were "dry," or without oil and gas.  (Id., ¶¶ 3, 4, 64–85.)  The SEC also asserted that Mr. Ratheal misappropriated investor funds to cover his personal living expenses.  (Id., ¶¶ 5, 84–85.)

On the same day the SEC filed the complaint, Mr. Ratheal and Premco, without admitting or denying the complaint's allegations, consented to entry of final judgments enjoining them from committing future securities violations, requiring them to pay disgorgement and prejudgment interest totaling $7,372,259.16, and acknowledging that the court would not impose civil penalties or require payment of the $7,372,259.16 given their sworn representations regarding their financial conditions.  (Premco Consent to Entry ¶ 2, SEC v. Premco, 2:12-cv-01120-BSJ, ECF No. 4; Ratheal Consent to Entry ¶ 2, SEC v. Premco, 2:12-cv-01120-BSJ, ECF No. 5.)  Mr. Ratheal and Premco further agreed to waive factual findings and not to take any action challenging the allegations in the SEC's complaint.  (Premco Consent to Entry ¶¶ 4, 11, SEC v. Premco, 2:12-cv-01120-BSJ, ECF No. 4; Ratheal Consent to Entry ¶¶ 4, 11, SEC v. Premco, 2:12-cv-01120-BSJ, ECF No. 5.)  On December 17, 2012, the court entered final judgments against Mr. Ratheal and Premco.  (Premco Final J., SEC v. Premco, 2:12-cv-01120-BSJ, ECF No. 8; Ratheal Final J., SEC v. Premco, 2:12-cv-01120-BSJ, ECF No. 9.)

On December 11, 2012, the SEC published on its website a litigation release summarizing the allegations in the SEC v. Premco complaint and the terms of the entry of final judgment to which Mr. Ratheal and Premco agreed.  (SEC Litig. Release No. 22556 (Dec. 11, 2012), available at:

https://www.sec.gov/litigation/litreleases/2012/lr22566.htm (last visited Aug. 29, 2018)).  Also on December 11, 2012, the Tribune published an article written by Tom Harvey

that reported on the recently filed SEC v. Premco case.  (Salt Lake Tribune, "SEC Sues St. George company for selling shares in dry oil wells" (Dec 11. 2012), Ex. A, Tribune Mot., ECF No. 16.)

In his Complaint in this case, Mr. Ratheal asserts that the SEC's online litigation release resulted in the December 11, 2012 Tribune article, that the Tribune and Mr. Harvey failed to perform due diligence with respect to the article, and that they failed to retract the defamatory article even after he made a request that they do so.  (Compl. ¶ 9, ECF No. 1.)

Mr. Ratheal claims damages for lost earnings over the past seven years and mental anguish over the loss of his personal and professional reputations.  (Compl. 3, ECF No. 1.)  He seeks monetary damages and injunctive relief from the Court, including ordering the Tribune to remove the allegedly defamatory statements from the internet. (Id.)

On September 5 and 11, 2017, Mr. Ratheal filed returned summonses indicating that he served all defendants, (ECF Nos. 2, 3 & 4), and filed an errata clarifying he sought $250,000,000.00 in damages.  (Errata, ECF No. 5.)  On September 13, 2017, the Court ordered Mr. Ratheal to effectuate proper service since he cannot personally serve the defendants and to file an amended complaint to correct the amount of damages sought.  (Order for Pl. to Effectuate Proper Service & Abide by the Fed. R. Civ. P., ECF No. 7.)  On September 22, 2017, Mr. Ratheal filed an Amended Complaint that corrected the amount of damages sought to $250,000,000.00 and made a few other typographical changes.  (Am. Compl., ECF No. 8.)  The Defendants and substance of the Amended Complaint remained unchanged from the original Complaint

Mr. Ratheal filed.  (See id.)  Mr. Ratheal also filed returned summonses indicating that he had served the Tribune and Mr. Harvey.  (ECF Nos. 13.)

On September 28, 2017, the Tribune Defendants filed a motion to dismiss Mr. Ratheal's claims against them.  (Tribune Mot., ECF No. 16.)  Mr. Ratheal filed an opposition memorandum on October 9, 2017,[3] (Mot. to Deny Defs.' Mot to Dismiss Salt Lake Tribune & Tom Harvey ("Opp'n to Tribune Mot."), ECF No. 21), and the Tribune Defendants filed a reply memorandum on October 23, 2017, (Reply Mem. in Supp. of Mot. to Dismiss ("Tribune Reply"), ECF No. 25).  Without seeking leave of court, Mr. Ratheal submitted an additional filing attempting to supplement the briefing on the Motion to Dismiss, (Mot. to Deny Defs.' Mot. to Dismiss (Re: Harvey, Salt Lake Tribune), ECF No. 28), which the Court rejected in its November 3, 2017 Order.  (Order Denying Mot. to Deny Defs. Mot. to Dismiss (Re: Harvey, Salt Lake Tribune), ECF No. 29.)  In that Order, the Court indicated that the briefing on the Tribune Defendants' Motion to Dismiss was closed and that the Court would consider the memoranda permitted under DUCivR 7-1 in deciding the Tribune Defendants' Motion to Dismiss. (Id.)

Also on December 29, 2017, without seeking leave of court, Mr. Ratheal filed a second Amended Complaint.  (2d Am. Compl., ECF No. 39.)  The second Amended Complaint makes minor typographical changes, but again the Defendants and substance remained unchanged from the prior iterations of the complaint.  (See id.)  On

---

[3] Mr. Ratheal styles his filings in response to the Tribune and SEC Defendants' motions as a "motion to deny" the motion at issue.  The Court construes such filings as oppositions and will refer to them as oppositions.  See DUCivR 7-1(b) (allowing the filing of opposition memorandum in response to a motion).

5

January 2, 2018, the Tribune Defendants filed a response to the second Amended Complaint and renewal of their motion to dismiss.  (Response to Pl.'s Am. Compl. & Renewal of Mot. to Dismiss, ECF No. 40.)  The Tribune Defendants noted that Mr. Ratheal did not obtain leave to file the second Amended Complaint and that, in any event, the substance of the allegations against them did not change.  (Id. at 1–2.)  Accordingly, they renewed their previously filed Motion to Dismiss and requested that the Court consider the Motion to Dismiss as asserted against the second Amended Complaint, as well.  (Id. at 2.)  On January 29, 2018, Mr. Ratheal filed a renewal of his opposition to the Tribune Defendants' Motion to Dismiss, acknowledging that the substance of the second Amended Complaint remained the same and claiming that he only made typographical changes to the SEC's name in the second Amended Complaint to comply with the Clerk of Court's December 29, 2017 Order.  (Renewal of Mot. to Deny Defs.' Harvey/Tribune Mot. to Dismiss, ECF No. 50.)  The Tribune Defendants responded to Mr. Ratheal's notice once again stating that the second Amended Complaint does not change substance of the allegations against them and requesting that the Court consider their previously filed Motion to Dismiss as asserted against Mr. Ratheal's recent filings.  (Resp. to Pl.'s Recent Filings on Mot. to Dismiss, ECF No. 51.)

## **LEGAL STANDARD**

The Tribune Defendants seek dismissal of Mr. Ratheal's claims pursuant to Rule 12(b)(6).  To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "'enough facts to state a claim to relief that is plausible on its face.'" Hogan v. Winder, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting Bell Atl. Corp. v. Twombly, 550

U.S. 544, 547 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  In reviewing a 12(b)(6) motion to dismiss, the court accepts as true the well-pled factual allegations and views the allegations in the light most favorable to the plaintiff.  Garling v. United States Envtl. Prot. Agency, 849 F.3d 1289, 1292 (10th Cir. 2017).  The court need not accept the plaintiff's conclusory allegations as true.  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  "[A] plaintiff must offer specific factual allegations to support each claim."  Kan. Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1214 (10th Cir. 2011) (citing Twombly, 550 U.S. at 570).  A complaint survives only if it "'states a plausible claim for relief,'" though courts recognize that "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context."  Id. at 1214–15 (quoting Iqbal, 556 U.S. at 679).

      While a court construes the filings of a pro se plaintiff liberally and holds them "to a less stringent standard than formal pleadings drafted by lawyers," Hall, 935 F.2d at 1110, a pro se plaintiff must "'follow the same rules of procedure that govern other litigants.'"  Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 840 (10th Cir. 2005) (quoting Nielsen v. Price, 17 F.3d 1276, 1277 (10th Cir. 1994)).  Thus, a pro se "plaintiff still has 'the burden of alleging sufficient facts on which a recognized legal claim could be based.'"  Jenkins v. Currier, 514 F.3d 1030, 1032 (10th Cir. 2008) (quoting Hall, 935 F.2d at 1110).  While the court must make allowances for "the [pro se] plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements[,]" Hall, 935 F.2d

7

at 1110, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." Garrett, 425 F.3d at 840; see also Whitney v. New Mexico, 113 F.3d 1170, 1175 (10th Cir. 1997) (acknowledging court should "not supply additional factual allegations to round out a [pro se] plaintiff's complaint or construct a legal theory on a plaintiff's behalf").

## PRELIMINARY MATTERS

Mr. Ratheal's claims in this case arise out of the investigation and subsequent settled civil suit in SEC v. Premco, 2:12-cv-01120-BSJ (D. Utah). Courts may take judicial notice of publicly-filed records in other courts if the proceedings relate to the case at hand. See United States v. Ahidley, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (recognizing that courts may take judicial notice of publicly-filed court records in other cases "concerning matters that bear directly upon the disposition of the case at hand"); St. Louis Baptist Temple v. Fed. Deposit Ins. Corp., 605 F.2d 1169, 1172 (10th Cir. 1979) ("[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.") Therefore, the undersigned takes judicial notice of the records in the SEC v. Premco case.

Mr. Ratheal's complaints also refer to a Tribune article published concerning the SEC v. Premco case and a litigation release the SEC posted online regarding the case. (See, e.g., 2d Am. Compl., ¶¶ 5 & 9, ECF No. 39.) The Tribune Defendants attached a copy of the article at issue to their Motion to Dismiss (Tribune Mot., Ex. A, ECF No. 16), and the SEC provided a link to the litigation release, (SEC Mot. 5, ECF No. 54). These materials are central to Mr. Ratheal's defamation claims, and Mr. Ratheal did not

Case 2:17-cv-00997-DAK   Document 62   Filed 08/31/18   PageID.266   Page 9 of 18

dispute the authenticity of the article and litigation release in responding to the Tribune and SEC Defendants' Motions to Dismiss.  "In addition to the complaint, the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."  Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002).  Accordingly, the undersigned considers these materials in deciding the Tribune Defendants' Motion to Dismiss.

Further, while Mr. Ratheal did not obtain written consent or seek leave to file the second Amended Complaint, as required by Federal Rule of Civil Procedure 15, the undersigned nevertheless considers that Complaint the operative pleading in this case.  As addressed above, all three complaints filed in this case remain substantially the same (and all citations remain the same), so the Tribune Defendants suffer no prejudice by Mr. Ratheal's filing of the second Amended Complaint.

## DISCUSSION

Mr. Ratheal asserts a single claim—for defamation—against the Tribune Defendants.  (2d Am. Compl. ¶ 9, ECF No. 39.)  He premises his claim on the December 11, 2012 publication of the article written by Mr. Harvey regarding the SEC v. Premco case.  (See id.; Tribune Mot., Ex. A, ECF No. 16.)  The Tribune Defendants move to dismiss Mr. Ratheal's defamation claim pursuant to Rule 12(b)(6), arguing that (1) the one year statute of limitations for libel bars his claim, (2) the truth of the statements in the article provides an absolute defense to defamation, and (3) the judicial

proceedings and neutral reporting privilege apply and bar Mr. Ratheal's defamation claim.[4]  (Tribune Mot. 3–7, ECF No. 16.)

In response to the Tribune Defendants' Motion, Mr. Ratheal claims he only discovered the Tribune article in spring 2017.  (Opp'n to Tribune Mot. 1, ECF No. 21.)  Mr. Ratheal further contends when he discovered the article he contacted Mr. Harvey to inform him that it "contained untrue statements" and request he fact check the article, do a follow-up article "showing both sides of the story," or remove it from the internet.  (Id. at 1-2.)  Mr. Ratheal received no response.  (Id. at 2.)  Without citing any authority, Mr. Ratheal argues that "the continued and maintained presence of the 2012 Tribune article online represents an instance of continuing negligence, and therefore that the one-year statute of limitation for filing a negligence/libel claim should still apply."  (Id.)  With respect to the Tribune Defendants' other arguments, Mr. Ratheal argues, again without citing any authority, "that the Tribune's failure to independently fact check and report its findings represents an ongoing negligent action."  (Id.)

In reply, the Tribune Defendants note that Mr. Ratheal's opposition "really only addresses" their statute of limitations argument.  (Tribune Reply 1, ECF No. 25.)  In response, the Tribune Defendants assert that the statute of limitations began to run when the Tribune published the article on December 11, 2012, not when Mr. Ratheal

---

[4] For purposes of deciding the Tribune Defendants' Motion to Dismiss, the undersigned finds that this Court has either supplemental jurisdiction or diversity jurisdiction over Mr. Ratheal's claims against the Tribune Defendants.  The Tribune Defendants do not contest the Court's subject matter jurisdiction over the claims Mr. Ratheal asserts against them, and the Court assesses jurisdiction at the time of the filing of the complaint.  Ravenswood Inv. Co. v. Avalon Corr. Servs., 651 F.3d 1219, 1223 (10th Cir. 2011) ("Federal jurisdiction is determined based on the facts as they existed at the time the complaint was filed.").

10

discovered it, and the single publication rule prevents any tolling of the statute of limitations based on the article's presence on the internet.  (Id. at 2-4.)

### A. The Statute of Limitations Bars Mr. Ratheal's Defamation Claim Against the Tribune Defendants

As the Tribune Defendants point out, libel is defamation in written form, so Utah's libel statute applies to Mr. Ratheal's claim concerning the December 11, 2012 Tribune article.  Mr. Ratheal does not dispute that the libel statute in Utah gives plaintiffs one year from the libelous statement to bring suit.  See Utah Code Ann. § 78B-2-302(4) ("An action may be brought within one year . . . for libel.").  Therefore the statute required Mr. Ratheal to bring any claims relating to the article before December 11, 2013.

While Mr. Ratheal does not dispute that the one-year statute of limitations applies, he argues that he did not discover the article until the spring of 2017, and that the article's continuing presence online constitutes continuing negligence, which tolled the statute of limitations.  He further suggests that his informing Mr. Harvey of alleged inaccuracies in the article in the spring of 2017 somehow impacts the running of the statute of limitations.  The undersigned finds no merit in these arguments.

First, that Mr. Ratheal discovered the article in spring 2017 does not affect the running of the statute of limitations.  "[T]he one-year period of [statute] does not begin to run until the libel is known or is reasonably discoverable by the plaintiff." Allen v. Ortez, 802 P.2d 1307, 1314 (Utah 1990).  The Utah Supreme Court held "that an alleged defamation is reasonably discoverable, as a matter of law, at the time it is first published and disseminated in a newspaper which is widely available to the public."  Russell v. Standard Corp., 898 P.2d 263, 264 (Utah 1995).  Because the Tribune published the article at issue on December 11, 2012, making it widely available to the public, the

11

statute of limitations began to run at that time. When Mr. Ratheal later discovered the article does not affect the statute of limitations.

Second, the continued presence of the article online did not toll the statute of limitations or otherwise impact it. Under the "single publication rule," the initial publication of an allegedly defamatory statement "'can give rise to only one cause of action in the jurisdiction where the dissemination occurred, and result in only one statute of limitations period that runs from the point at which the original dissemination occurred.'" Pliuskaitis v. USA Swimming, Inc., 243 F. Supp. 3d 1217, 1228–29 (D. Utah 2017), aff'd sub nom. Pliuskaitis v. USA Swimming, No. 17-4051, 2018 WL 258773 (10th Cir. Jan. 2, 2018) (unpublished), (quoting Oja v. U.S. Army Corps of Eng'rs, 440 F.3d 1122 (9th Cir. 2006)). Jurisdictions that have considered the "single publication rule" in the context of materials posted on the internet have uniformly found that the rule applies. See, e.g., Pippen v. NBCUniversal Media, LLC, 734 F.3d 610, 615 (7th Cir. 2013) ("Every state court that has considered the question applies the single-publication rule to information online . . . And those federal courts that have addressed the topic have concluded that the relevant state supreme court would agree."); Nationwide Bi-Weekly Admin., Inc. v. Belo Corp., 512 F.3d 137, 144 (5th Cir. 2007) ("Given that every case to consider the issue has applied the single publication rule to publicly available Internet articles, it is clearly the majority approach . . . Furthermore, we find the rationale behind the widespread acceptance of the single publication rule in the Internet context persuasive.") "'The single publication rule prevents the constant tolling of the statute of limitations[.]'" Diamond Ranch Acad., Inc. v. Filer, No. 2:14-CV-751-TC, 2016 WL 633351, at *8 (D. Utah Feb. 17, 2016) (unpublished), appeal dismissed per stipulation

No. 16-4034, (quoting Churchill v. New Jersey, 876 A.2d 311, 316 (N.J. Super. Ct. App. Div. 2005)). "'Absent this rule, publishers and the mass media would be subject to a multiplicity of claims leading to potential harassment, excessive liability, and draining of judicial resources.'" Id. (quoting Woodhull v. Meinel, 202 P.3d 126, 130 (N.M. 2008)).

While the Utah Supreme Court has not specifically extended the "single publication rule" to internet publications, the undersigned concurs with other District of Utah decisions in finding that the Utah Supreme Court would follow the lead of cases from other jurisdictions and apply the rule to materials posted online. See Pliuskaitis, 243 F. Supp. 3d at 1229 ("While the Utah Supreme Court has not considered whether the defamation statute of limitations applies to alleged defamatory statements posted on the Internet, 'other jurisdictions faced with the same issue have uniformly extended the single publication rule to Internet publications' . . . This court believes that the Utah Supreme Court will likely follow suit.") (quoting Diamond Ranch, 2016 WL 633351, at *8); Diamond Ranch, 2016 WL 633351, at *9 ("This court predicts that the Utah Supreme Court would follow the well-reasoned lead of those cases and apply the single publication rule to the [online] statements at issue in this case.").

Furthermore, the Tribune Defendants' failure to remove the article or take other action after Mr. Ratheal informed Mr. Harvey about alleged inaccuracies in the article did not restart the limitations period. See Roberts v. McAfee, Inc., 660 F.3d 1156, 1167–69 (9th Cir. 2011) (finding that a failure to retract an article after receiving notice of alleged falsity "undermines the single-publication rule" and does not result in a republication for purposes of restarting the limitations period). Therefore, the one-year statute of limitations began to run on Mr. Ratheal's libel claim against the Tribune

Defendants on December 11, 2012, and the article's continuing presence online did not toll or restart the limitations period. The one-year statute of limitations expired on December 11, 2013. Mr. Ratheal filed his defamation claim against the Tribune Defendants in September 2017. Accordingly, the undersigned RECOMMENDS the District Judge DISMISS Mr. Ratheal's defamation claim against the Tribune Defendants as time-barred.

### B. The Truth of the Statements in the Article Bar Mr. Ratheal's Defamation Claim as a Matter of Law

Alternatively, the Tribune Defendants argue that Mr. Ratheal's defamation claim fails as a matter of law because of the substantial truth of the statements in the Tribune's article, which provides a complete defense to a defamation claim.

"To establish defamation under Utah law, a plaintiff must prove four elements: (1) that the defendants 'published the statements'; (2) that the 'statements were false, defamatory, and not subject to any privilege'; (3) 'that the statements were published with the requisite degree of fault'; and (4) that 'their publication resulted in damage' to the plaintiff." Hogan, 762 F.3d at 1105 (quoting West v. Thomson Newspapers, 872 P.2d 999, 1007–08 (Utah 1994)). In Utah "truth is an absolute defense to an action for defamation." Brehany v. Nordstrom, Inc., 812 P.2d 49, 57 (Utah 1991). "The defense of truth is sufficiently established if the defamatory charge is true in substance. Insignificant inaccuracies of expression do not defeat the defense of truth." Id. at 57–58; see also Jensen v. Sawyers, 2005 UT 81, ¶ 89, 130 P.3d 325 (stating that inaccurate statements are not "actionable so long as their 'gist' or 'sting' rings true"); Brokers' Choice of Am., Inc. v. NBC Universal, Inc., 757 F.3d 1125, 1137 (10th Cir. 2014) ("'A defendant asserting truth as a defense in a libel action is not required to

14

justify every word of the alleged defamatory matter; it is sufficient if the substance, the gist, the sting, of the matter is true.'" (quoting Gomba v. McLaughlin, 504 P.2d 337, 339 (Colo. 1972)).

"Whether a statement is 'true in substance' can be decided as a matter of law on a motion to dismiss." Vowell v. Gannett Satellite Info. Network, LLC, No. 2:16CV449DAK, 2017 WL 499942, at *1 (D. Utah Feb. 7, 2017) (unpublished) (citing Brokers' Choice, 757 F.3d at 1137); see also Hogan, 762 F.3d at 1106 ("When the 'underlying facts as to the gist or sting are undisputed, substantial truth may be determined as a matter of law.'" (quoting Brokers' Choice, 757 F.3d at 1137)).

Mr. Ratheal does not take issue with any particular statements in the Tribune's article, instead referring to the entire article as defamatory. The undersigned reviewed the article carefully and finds the statements in it substantially true. The article reports on the SEC's filing of the SEC v. Premco action, recites allegations the SEC made in the complaint, and notes Mr. Ratheal consented to a final judgment. Indeed, Mr. Harvey quotes from the publicly available complaint and otherwise uses other language ("according to the lawsuit filed by the Securities and Exchange Commission in federal court in Salt Lake City," "according to the lawsuit," "the lawsuit says," etc.) making clear that the substance of the article reports the allegations made in the SEC's complaint in the SEC v. Premco case. The article further reports on publicly available information in other court cases and related proceedings involving Mr. Ratheal.

Because the Tribune's December 11, 2012 article is substantially true, Mr. Ratheal's defamation claim against the Tribune Defendants fails as a matter of law. Accordingly, the undersigned alternatively RECOMMENDS the District Judge GRANT

the Tribune Defendants' Motion because the alleged defamatory article is substantially true thus eliminating any claim for defamation.

### C. Privilege Bars Mr. Ratheal's Claims

The Tribune Defendants also argue that the judicial proceedings privilege and neutral reportage privilege apply and bar Mr. Ratheal's claims. (Tribune Mot. 4–7, ECF No. 16.)

First, the judicial proceedings privilege protects statements made by parties to a judicial proceeding. See Price v. Armour, 949 P.2d 1251, 1256 (Utah 1997) ("An absolute privilege is granted to participants in judicial proceedings. The policy behind such privilege is to encourage full and candid participation in judicial proceedings by shielding the participant from potential liability for defamation."). The Utah Supreme Court requires that "the statements must be 'made by someone acting in the capacity of judge, juror, witness, litigant, or counsel.'" Krouse v. Bower, 2001 UT 28, ¶ 8, 20 P.3d 895, 898 (quoting DeBry v. Godbe, 1999 UT 111, ¶ 11, 992 P.2d 979). The Tribune Defendants published an article related to judicial proceedings, but they did not participate in the proceedings. Therefore, the privilege does not apply.

Second, the Tribune Defendants rely on an unpublished Utah Court of Appeals decision, Schwarz v. Salt Lake Tribune, 2005 UT App 206, 2005 WL 1037843, at *1 (unpublished), to argue that Utah recognizes the neutral reportage privilege. The Court declines to rely on this case to find that the neutral reporting privilege applies at this stage of the case. See DUCivR 7-2(a) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.")

The Tribune Defendants also cite to Utah Code section 45-2-3(2), which accords privilege to "any publication . . . of . . . any . . . judicial proceeding." (Tribune Mot. 5, ECF No. 16.)  Because the article quotes from the complaint, this privilege also appears to apply.

Furthermore, the Tribune Defendants cite Utah Code section 45-2-3(4), which accords privilege to "a fair and true report, without malice, of a judicial . . . proceeding, or of anything said in the course thereof." (Tribune Mot. 5, ECF No. 16.)  Utah Code section 45-2-3(4) "protect[s] the right of the press to report on, and the right of the public to know of, the areas in which government operates.  A correct interpretation of the statute must encompass all official governmental proceeds." Russell v. Thomson Newspapers, Inc., 842 P.2d 896, 900-01 (Utah 1992) (interpreting an earlier version of the statute).  Subsection four requires the report be "fair and true." Id. at 902; Utah Code Ann. § 45-2-3(4).  Given the undersigned's findings on the defense of truth, this privilege would also apply.

Hence, the undersigned alternatively RECOMMENDS the District Judge GRANT the Tribune Defendants' Motion because the Tribune's alleged defamatory statements were privileged from any claim for defamation under Utah Code section 45-2-3.

### **RECOMMENDATION**

For the reasons stated above, the undersigned RECOMMENDS the District Judge DISMISS Mr. Ratheal's defamation claim against the Tribune Defendants with prejudice because the statute of limitations bars that claim.  Alternatively, the District Judge could dismiss Mr. Ratheal's defamation claim with prejudice because the

statements at issue are substantially true as a matter of law and/or privileged pursuant to Utah Code section 45-2-3.

The Court will send copies of this Report and Recommendation to the parties and hereby notifies them of their right to object to the same. The Court further notifies the parties that they must file any objection to this Report and Recommendation with the clerk of the district court, pursuant to 28 U.S.C § 636(b) and Fed. R. Civ. P. 72(b), within fourteen (14) days of receiving it. Failure to file objections may constitute waiver of objections upon subsequent review.

DATED this 31st day of August, 2018.

BY THE COURT:

EVELYN J. FURSE
United States Magistrate Judge